Kristine L. Butler, Esquire
VOLPE AND KOENIG, P.C.
212 Carnegie Center, Suite 202
Princeton, New Jersey 08540
Phone:  (609) 924-7900
Fax:  (609) 924-7902

Ryan W. O'Donnell, Esquire
VOLPE AND KOENIG, P.C.
United Plaza
30 South 17th Street
Philadelphia, Pennsylvania 19103
Phone:  (215) 568-6400
Fax:  (215) 568-6499

*Attorneys for Plaintiffs,*
*Telecommunications Research*
*Laboratories d/b/a TR Labs and*
*TR Technologies, Inc.*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **TELECOMMUNICATIONS RESEARCH LABORATORIES d/b/a TR LABS AND TR TECHNOLOGIES, INC.** | ) ) ) ) |
| **Plaintiffs,** | ) ) |
| v. | ) Civ. No. 3:09-CV-03883(PGS)(DEA) ) |
| AT&T CORP., | ) ELECTRONICALLY FILED ) |
| **Defendant.** | ) |

**TR LABS' OPPOSITION TO AT&T'S MOTION FOR PARTIAL SUMMARY**
**JUDGMENT OF PATENT EXHAUSTION**

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................... i

TABLE OF AUTHORITIES ........................................................................................... ii

I.   Introduction ..............................................................................................................1

II.  Background ..............................................................................................................1

III. There Was No Patent Exhaustion ............................................................................4

    A.   There was no covenant not to sue extending to AT&T .....................................4

    B.   Any offered covenant does not result in exhaustion ..........................................6

IV.  The Accused Devices do not Embody the Claimed Inventions ..............................7

V.   AT&T'S Proposed Result is Untenable ...................................................................7

VI.  Conclusion ...............................................................................................................7

# TABLE OF AUTHORITIES

*Benitec Austl., Ltd. v. Nucleonics, Inc.*, ..................................................................................5, 6
495 F.3d 1340 (Fed. Cir. 2007)

*Dow Jones & Co. v. Ablaise Ltd.*, ........................................................................................ 5
606 F.3d 1338 (Fed. Cir. 2010)

*Lifescan, Inc. v. Shasta Techs*., LLC, ........................................................................................6
2013 U.S. Dist. LEXIS 38677 (N.D. Cal. March 19, 2013)

*Organic Seed Growers & Trade Ass'n v. Monsanto Co.*, ..................................................4, 5
718 F.3d 1350 (Fed. Cir. 2013)

*Quanta Computer, Inc. v. LG Elecs., Inc.*. ..............................................................................6
 553 U.S. 617 (2008)

*TransCore v. Elec. Transaction Consultants* ..........................................................................6, 7
563 F.3d 1271 (Fed. Cir. 2009)

*United States* v. *Univis Lens Co.*, ............................................................................................6
316 U.S. 241 (1942)

I.   Introduction

To avoid a waste of judicial resources, TR Labs wants to make clear at the outset that there is absolutely *no* dispute regarding: a) AT&T's characterizations of the '734 and '059 patents; b) the evidence relied upon by TR Labs in its infringement contentions for those patents; and c) AT&T's characterization of the procedural posture of the *Cisco Sys., Inc. v. Alberta Telecomms. Research Ctr.* litigation.  There is also no dispute that, although TR Labs offered Cisco a covenant not to sue, given the lack of a justiciable controversy, none was ever actually concluded.

The real, and only, dispute here is what TR Labs ***offered*** to Cisco, and whether AT&T can somehow piggyback off of that offer.  Despite the singular importance of this issue, AT&T devotes only one of its 35 proposed statements of fact thereto – the last one.  As will be demonstrated herein, during the *Cisco* litigation, TR Labs offered to release Cisco because: a) Cisco was not a direct infringer of the subject patent claims, which are all directed to a telephone ***network***, instead of the individual components thereof; and b) because Cisco's components had substantial, non-infringing uses, Cisco was not an indirect infringer.  However, in all of its correspondence with Cisco, TR Labs made it clear that any release granted to Cisco would ***not*** include Cisco's customers, or the use of Cisco's equipment in an infringing network.  While TR Labs repeatedly offered Cisco a covenant not to sue, including during the oral argument on appeal, Cisco never accepted the offer.  It was for this reason that the *Cisco* litigation continued through appeal, and why there is no exhaustion here.

II.   Background

On June 26, 2012, three years after the commencement of this litigation, Cisco filed a declaratory judgment action seeking a declaration that, *inter alia*, the '734 and '059 patents are

invalid and not infringed "by Cisco or its customers through their use of Cisco's products in their telecommunications networks."  Additional Fact No. 1.

In response, TR Labs filed a motion to dismiss the complaint for lack of subject matter jurisdiction, positing that there was no justiciable controversy between TR Labs and Cisco specifically.  Additional Fact No. 2.  The bases for this lack of justiciable controversy were: a) Cisco does not operate a telephone network, and cannot be a direct infringer; b) Cisco's equipment has substantial non-infringing uses, and Cisco cannot contribute to the infringement of a third party; and c) Cisco lacked the requisite intent to induce infringement by a third party. Additional Fact No. 3.

After TR Labs filed its motion to dismiss, and in light of the purported lack of controversy between the parties, Cisco proposed a covenant not to sue, which included a representation that TR Labs would not pursue a claim of infringement asserting that the manufacture, use, or sale of "any product" "is covered by, in whole or in part, directly or indirectly, any of the claims of any of the TR Labs Patents."  Additional Fact No. 4.  In response to the draft, TR Labs' counsel made clear that any covenant that would "prevent TR Labs from asserting an infringement claim against Cisco's customers for the use of a telephone network deploying Cisco products" would be "unacceptable."  Additional Fact No. 5.

In response to a re-draft of Cisco's proposed covenant, TR Labs' counsel reiterated that it would not agree to any language that purports to give any rights to Cisco's customers:

> The agreement, as written, now makes it very clear that TR Labs would be precluded from asserting a claim against anyone other than Cisco wherein TR Labs alleges that a Cisco product is covered even 'in part' by a TR Labs patent. ***Obviously, we cannot agree to that, as such forms part of our direct infringement claim against Cisco's customers***.

Additional Fact No. 6.

Having failed to conclude its overreaching covenant, Cisco filed its opposition to TR

Labs' motion to dismiss. Therein, Cisco responded that TR Labs' "extensive reliance on Cisco's products and Cisco's product literature in its infringement contentions creates an actual case or controversy here." Additional Fact No. 7. Importantly, nowhere did Cisco argue that it could be accused of direct infringement, that its equipment could only be used in the manner accused infringement, or that Cisco intended that its customers use its equipment in such manner. In other words, the parties tacitly agreed that TR Labs could not accuse *Cisco* of any infringing acts.

Cisco also pointed to TR Labs' afore-described refusal to provide Cisco with a covenant not to sue, citing the Email from TR Labs' counsel that the covenant, apparently including Cisco's customers, was "unacceptable." Additional Fact No. 8. TR Labs, in its reply, reiterated that the refusal was indeed based on the "vastly overreaching" nature of the proposed covenant. Additional Fact No. 9.

In dismissing Cisco's complaint, the Court addressed the issue of the covenant not to sue, finding that "it is not necessarily true" that a failure to agree to such a covenant creates a justiciable controversy, "particularly if, as TR Labs claims here, it was unwilling to agree to Cisco's draft proposal because such a covenant to sue would have essentially resulted in the elimination of TR Labs' ability to sue alleged infringers who also happened to be Cisco's customers." Additional Fact No. 10.

Cisco appealed from the dismissal of its complaint, and the issue of the proposed covenant came up during the oral argument before the Federal Circuit. Additional Fact No. 11. Further, in a post-argument letter to the Court, TR Labs once again reiterated that "Cisco is unwilling to accept a release that is personal to it, *i.e.*, one that makes clear that Cisco's customers remain liable for infringement." Additional Fact No. 12.

On appeal, the Federal Circuit demonstrated clearly that it understood precisely what had

transpired between TR Labs and Cisco vis-à-vis the proposed covenant and Cisco's customers:

> TR Labs has expressly offered to give Cisco a covenant not to sue Cisco for infringement of any of the asserted patents. As noted above, TR Labs' counsel stated that TR Labs has 'no basis for suing [Cisco] either for direct or indirect infringement' and 'we were happy' to give Cisco a covenant not to sue. *Id.* at 24:20-24:35. It is understandable that Cisco may have an interest in saving its customers from infringement contentions premised, even in part, on their use of Cisco products. In the circumstances presented here, that interest is simply insufficient to give rise to a current, justiciable case or controversy upon which federal declaratory judgment jurisdiction may be predicated.

Additional Fact No. 13.

In affirming the district court's dismissal, the Federal Circuit cited to TR Labs' concession that it is willing to grant Cisco an unqualified covenant not to sue, and the parties' agreement that Cisco's products have substantial non-infringing uses. Additional Fact No. 14. As AT&T acknowledges, no covenant was ever concluded. *See* AT&T Br. at 14.

It is in this factual circumstance that AT&T filed the instant motion to compel, claiming that, as Cisco's ***customer*** its operation of Cisco equipment in its accused network is somehow authorized by virtue of the doctrine of patent exhaustion. AT&T is wrong.

**III.** **There Was No Patent Exhaustion**

    **A.** *There was no covenant not to sue extending to AT&T*

AT&T's discussion of the exhaustion issue begins with the incorrect proposition that TR Labs "granted" Cisco a covenant not to sue that somehow also applied to AT&T. AT&T Br. at 13-14. While AT&T concedes that TR Labs merely ***offered*** Cisco a covenant, it argues that, under the circumstances, the offer in all ways equates to a grant, which would also cover AT&T. *Id.* at 14. The cases cited by AT&T to support this dubious proposition, however, fail to do so. In fact, the decision in *Organic Seed Growers & Trade Ass'n v. Monsanto Co.* stands for precisely the opposite proposition. Specifically, Monsanto posted a statement on its website that it "will not pursue a patent-infringement suit where Monsanto's patented traits appear

inadvertently . . . in minimal quantities." *Organic Seed Growers & Trade Ass'n v. Monsanto Co.*, 718 F.3d 1350, 1358 (Fed. Cir. 2013). During the litigation, Monsanto reiterated that, as "none of your clients intend to possess, use or sell any transgenic seed, including any transgenic seed potentially covered by Monsanto's patents . . . any fear of suit or other action is unreasonable, and any decision not to grow certain crops unjustified." 718 F.3d 1350, 1358 (Fed. Cir. 2013).

The court found that these representations had a "similar effect" to a covenant not to sue. *Id.* However, Monsanto "resisted [the court's] efforts to clarify whether it would assert its patents against a conventional grower who inadvertently uses or sells *greater* than trace amounts of modified seed, but who, for example, does not make use of the Roundup Ready trait by spraying the plants with glyphosate." *Id.* As a result, the court could not "conclude that Monsanto has disclaimed any intent to sue a conventional grower who never buys modified seed, but accumulates greater than trace amounts of modified seed by using or selling contaminated seed from his fields." *Id.*

In other words, Monsanto's implied reservation regarding conventional growers meant that any "covenant" (or equivalent thereto) granted by Monsanto would not include such growers. Here, TR Labs had made it absolutely clear that any covenant it would extend to Cisco would *not* include Cisco's customers. Thus, according to the reasoning in *Monsanto*, any "covenant" (or equivalent thereto) granted by TR Labs to Cisco would not include such customers.

In *Dow Jones & Co. v. Ablaise Ltd.*, also cited by Cisco, the issue facing the Court on appeal was whether an offer of a covenant not to sue "was sufficient to divest the district court of subject matter jurisdiction . . . for declaratory judgment of invalidity." *Dow Jones & Co. v. Ablaise Ltd.*, 606 F.3d 1338, 1345 (Fed. Cir. 2010). Similarly in *Benitec Austl., Ltd. v. Nucleonics, Inc.*, the patentee, in its appeal brief, covenanted not to sue "for patent infringement

arising from activities and/or products occurring on or before the date dismissal was entered." *Benitec Austl., Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340, 1343 (Fed. Cir. 2007). Based upon this covenant, the court found that there is no controversy between the parties. *Id.* at 1348. **Nothing** in either of these decisions addresses the question of whether the offer translated into any third party rights, and AT&T cannot rely upon these decisions to assert that it somehow derives rights from the covenant offered to Cisco.

### B. *Any offered covenant does not result in exhaustion*

AT&T's next incorrect statement is that "a covenant authorizes all sales by the recipient of the covenant under the doctrine of patent exhaustion." AT&T Br. at 15. The Supreme Court in *Quanta Computer, Inc. v. LG Elecs., Inc.* reiterated that "the authorized sale of an article ***which is capable of use only in practicing the patent*** is a relinquishment of the patent monopoly with respect to the article sold." *Quanta Computer, Inc. v. LG Elecs., Inc.*, 553 U.S. 617, 631 (2008), *quoting United States* v. *Univis Lens Co.,* 316 U.S. 241, 249 (1942) (emphasis added).

As noted above, TR Labs offered the "covenant" in light of the substantial non-infringing uses of Cisco's products. Therefore, any "covenant" offered by TR Labs to Cisco cannot give rise to the patent exhaustion doctrine because of these substantial non-infringing uses. *See Quanta*, 553 U.S. at 631.

Further, TR Labs received no consideration for any "covenant" it offered to Cisco, and "exhaustion has not been found when the patentee has not received any consideration in exchange for the patented article." *Lifescan, Inc. v. Shasta Techs*., LLC, 2013 U.S. Dist. LEXIS 38677 at *17 (N.D. Cal. March 19, 2013). This absence of consideration also precludes the application of patent exhaustion.

AT&T cites *TransCore v. Elec. Transaction Consultants* as somehow instructive on the

issue of patent exhaustion here.  *See* AT&T Br. at 15.   However, in *TransCore*, the patentee had concluded a settlement agreement reading, in relevant part, "[TransCore] agrees and covenants not to bring any demand, claim, lawsuit, or action against Mark IV for future ***infringement***." *TransCore v. Elec. Transaction Consultants,* 563 F.3d 1271, 1274 (Fed. Cir. 2009) (emphasis added).  In *Cisco*, there was no agreement ever concluded, and there was no infringement by Cisco, so the holding in *TransCore* is inapplicable here.

### IV.     The Accused Devices do not Embody the Claimed Inventions

Cisco argues that the accused devices "substantially embody" the inventions claimed in the '734 and '059 patent because, *inter alia*, "AT&T is using the Cisco devices in their intended manner." AT&T Br. at 16.  As noted above, it was conceded in the *Cisco* litigation that such devices have substantial non-infringing uses.  Thus, AT&T was using the subject devices in ***an*** intended manner, not ***the*** intended manner.  AT&T may disagree with the concession made regarding non-infringing uses in the *Cisco* matter.  However, as noted above, that concession forms a substantial part of the "covenant" offered by TR Labs, and must be part of the discussion here.

### V.     AT&T's Proposed Result is Untenable

If AT&T has its way, and TR Labs' actions are found to have exhausted its patent rights, similarly-situated patentees will be faced with the choice of either: 1) urging frivolous patent counterclaims against declaratory judgment plaintiffs; or 2) conceding non-infringement and risking patent exhaustion.  Neither result is reasonable, and AT&T's position in the instant motion should be rejected.

### VI.     Conclusion

For the foregoing reason, AT&T's motion for summary judgment should be denied.

Dated:  November 4, 2013                    Respectfully submitted,


                                                          s/ Kristine L. Butler
                                            Kristine L. Butler, Esquire
                                            VOLPE AND KOENIG, P.C.
                                            212 Carnegie Center, Suite 202
                                            Princeton, New Jersey 08540
                                            Telephone:  (609) 924-7900
                                            Facsimile:  (609) 924-7902

                                            Ryan W. O'Donnell, Esquire
                                            VOLPE AND KOENIG, P.C.
                                            United Plaza
                                            30 South 17th Street
                                            Philadelphia, Pennsylvania 19103
                                            Telephone:  (215) 568-6400
                                            *Attorneys for Plaintiffs*
                                            *Telecommunications Research*
                                            *Laboratories d/b/a TR Labs and*
                                            *TR Technologies, Inc.*

OF COUNSEL:

George C. Summerfield
STADHEIM & GREAR, LTD.
400 North Michigan Avenue, Suite 2200
Chicago, Illinois 60611
Telephone:  (312) 755-4400
Facsimile:  (312) 755-4408