NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: TR LABS PATENT LITIGATION | MDL No. 2396<br><br>Lead Case:<br>Civil Action No. 09-3883 (PGS) (DEA)<br><br>(ALL CASES)<br><br>MEMORANDUM & ORDER |

**SHERIDAN, U.S.D.J.**

This matter comes before the Court by Defendant, AT&T Corp.'s, motion for partial summary judgment for patent exhaustion of U.S. Patent No. 6,404,734 ('734 Patent) and U.S. Patent No. 7,260,059 ('059 Patent) pursuant to Federal Rule of Civil Procedure 56.   Through this motion, AT&T seeks to have Plaintiff's, Alberta Telecommunications Research Centre ("TR Labs"), infringement contentions dismissed as to the '734 and '059 Patents under the doctrine of patent exhaustion where there is any reference to the use of Cisco Systems, Inc. ("Cisco") products.  TR Labs has opposed this motion.  Having considered the submissions of the parties, and having heard oral argument on March 3, 2014, the Court grants AT&T's motion for partial summary judgment, in part, as to the '734 Patent for the reasons set forth below.[1]

### I.  FACTS

It is undisputed that on June 26, 2012, Cisco, a manufacturer of telecommunications equipment, filed a declaratory action against TR Labs seeking a declaratory judgment of

---

[1] The Court has filed a Memorandum & Order resolving the pending summary judgment motion of invalidity of the '059 Patent by deciding that the '059 Patent is invalid for indefiniteness.  For that reason,  the Court will deny as moot any analysis of whether patent exhaustion applies to the '059 Patent.

invalidity and non-infringement as to TR Labs' '734 and '059 Patents. *Cisco Sys., Inc. v. Alberta Telecomms. Research Ctr.*, 892 F. Supp. 2d 1226 (N.D. Cal. Aug. 31, 2012). Cisco's declaratory action was filed three years after TR Labs commenced several patent infringement actions against various national and regional telecommunications network providers. *Id.* at 1228. Some of the telecommunications network providers that were being sued for infringement by TR Labs were Cisco customers, including AT&T, which prompted Cisco to initiate a declaratory action. *Id.* at 1228-29.

In the Cisco declaratory action, Cisco asserted that an actual controversy existed because TR Labs' served infringement contentions that included the use of Cisco's products by its customers. *Id.* at 1229. The district court granted TR Labs' motion to dismiss Cisco's complaint for lack of subject matter jurisdiction, finding, *inter alia*, that there was no justiciable controversy against Cisco for direct or indirect infringement. *Cisco Sys.,* 892 F. Supp. 2d at 1233. The court also found that the parties' inability to agree on the scope of a covenant not to sue and whether it applied to purchasers of Cisco's equipment, like AT&T, did not give rise to a justiciable controversy. *Id.* at 1233-34.

On appeal, the Federal Circuit affirmed the dismissal of Cisco's complaint for lack of subject matter jurisdiction because there was no justiciable controversy. *Cisco Sys., Inc. v. Alberta Telecomms. Research Ctr.,* 583 Fed. App'x 894 (Fed. Cir. 2013). The court's decision was based, in part, on TR Labs' offer of a covenant not to sue Cisco for infringement of any of the asserted patents. *Id.* at 898.

While TR Labs offered Cisco a covenant not to sue and the parties negotiated the terms during the course of the declaratory action proceedings, TR Labs and Cisco never entered into a covenant not to sue. AT&T br. at 14.

AT&T alleges that TR Labs' infringement contentions are entirely based on AT&T's use of Cisco's products that satisfy each claim in the '734 and '059 Patents.[2]  AT&T br. at 7.  AT&T Khan Decl., Ex. A.  TR Labs does not dispute AT&T's characterization of the '734 Patent or the '059 Patents, the infringement contentions asserted, nor the evidence cited in support of the alleged infringement.  TR Labs Br. at 1.  The parties are in dispute over whether AT&T can use TR Labs' offer of a covenant not to sue to Cisco, and whether Cisco's products substantially embody its patents under the doctrine of patent exhaustion as to the '734 and '059 Patents.

## II.     ANALYSIS

### A.     Legal Standard

Summary judgment should be granted under Fed. R. Civ. P. 56 when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Disputes over facts that are not relevant or necessary will not preclude a grant of summary judgment.  *Id.*  "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists.  *Jersey Cent. Power & Light Co. v.*

---

[2] Because the parties have filed this motion under seal, the Court will not specifically reference the infringement contentions.

*Lacey Twp.*, 772 F.2d 1103, 1109 (3d Cir. 1985). The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248; *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1130-31 (3d Cir. 1995). To do so, the non-moving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324. In other words, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." *Schoch v. First Fidelity Bancorp.*, 912 F.2d 654, 657 (3d Cir. 1990); *see also* Fed. R. Civ. P. 56(e) (requiring nonmoving party to "set forth specific facts showing that there is a genuine issue for trial."). Moreover, only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. *Anderson*, 477 U.S. at 247-48. If a court determines, "after drawing all inferences in favor of [the non-moving party], and making all credibility determinations in his favor — that no reasonable jury could find for him, summary judgment is appropriate." *Alveras v. Tacopina*, 226 Fed. App'x. 222, 227 (3d Cir. 2007).

### B.  Patent Exhaustion as to the '734 Patent

The doctrine of patent exhaustion is a well-settled judicial construct that "provides that the initial authorized sale of a patented item terminates all patent rights to that item." *Quanta Computer, Inc. v. LG Elecs., Inc.*, 553 U.S. 617, 625 (2008) (discussing several court decisions applying the longstanding doctrine that creates post-sale restrictions on the use of a patented item). Patent exhaustion applies if there is (1) an authorized sale of a patented item; and (2) the

authorized product "substantially embodies" the patent. *Id.* at 635-36. After the authorized sale, the patent holder cannot invoke his patent rights to control the purchaser's use, or any subsequent owner's use, of the patented item or any item that sufficiently embodies the patent. *Id.* at 638. That is, the "the buyer is impliedly authorized to repair, use, modify, and resell the purchased item, free from further claims under the patent laws by the seller." Federal Judicial Center, Patent Law and Practice, § 6.1.B. (7th ed. 2011).

### 1. Was There an Authorized Sale?

A patent holder is granted the right to exclude others from making, using, offering for sale, or selling the invention throughout the United States. 35 U.S.C. § 154(a)(1). The patent grant only provides the patentee with the right to exclude and not an affirmative right to practice the patent. *Leatherman Tool Group v. Cooper Indus., Inc.*, 131 F.3d 1011, 1015 (Fed. Cir. 1997). As such, a patentee's right to exclude others can be conveyed by license or other agreement, which is simply a promise not to sue for infringement. *TransCore, LP v. Elec. Transaction Consultant*, 563 F.3d 1271, 1276 (Fed. Cir. 2009) (citing U*.S. Philips Corp. v. Int'l Trade Comm'n,* 424 F.3d 1179, 1189 (Fed. Cir. 2005) ("A nonexclusive patent license is simply a promise not to sue for infringement.") (other internal citations omitted)). Thus, "a non-exclusive patent license is equivalent to a covenant not to sue." *Id.* at 1275.

A covenant not to sue operates in the same way as an authorized sale or license of a patented product under the patent exhaustion doctrine. *Id.* at 1276 (finding that the difference between a covenant not to sue and a license "is only one of form, not substance- both are properly viewed as 'authorizations.'"). Courts have also held that the *offer* of a covenant not to sue qualifies as an authorized sale and has the same effect as a covenant that has been executed

and agreed upon between the parties. *Dow Jones v. Ablaise Ltd.*, 606 F.3d 1338, 1348 (Fed. Cir. 2010); *Benitec Australia, Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340, 1347-48 (Fed. Cir. 2007).

AT&T argues that the patent exhaustion doctrine bars TR Labs' patent infringement claims as to the '734 Patent because TR Labs' infringement allegations against AT&T are limited to its use of Cisco's products. AT&T Br. at 13. More specifically, AT&T asserts that the requirements for the doctrine to apply have been established here because (1) there was an "authorized sale" between TR Labs and Cisco through TR Lab's offer of a covenant not to sue; and (2) Cisco's products substantially embody the claim limitations in the '734 Patent. *Id.* at 13-19.

As to the first requirement of an "authorized sale," AT&T argues that TR Labs' offer of a covenant not to sue Cisco was employed to defeat Cisco's declaratory judgment action, in which the '734 Patent was at issue. *Id.* at 14. AT&T argues that TR Labs' intent that the covenant not to sue should not be extended to Cisco's customers is not material. *Id.* at 15-16.

TR Labs counters that there are material facts in dispute regarding its offer of a covenant not to sue to Cisco. TR Labs Br. at 1, 4. TR Labs concedes that it made such an offer, but emphasizes that the covenant was never executed because TR Labs was unwilling to extend the covenant to Cisco's customers. *Id.* at 3. TR Labs further points out that any offer made to Cisco does not extend to AT&T, and the cases cited by AT&T, *Dow Jones* and *Benitec*, do not support AT&T's claims that the covenant can be extended to benefit third parties. *Id.* at 4-6. TR Labs also argues that it received no consideration for any proposed covenant to Cisco, and cites to the district court's decision in *Lifescan, Inc. v. Shasta Techs.*, where the court found that "exhaustion has not been found when a patentee has not received any consideration in exchange for the

6

patented article." 933 F. Supp. 2d 1243, 1250 (N.D. Cal. 2013), *rev'd* 734 F.3d 1361 (Fed. Cir. 2013).

Despite TR Labs' objections, the Court finds that TR Labs' offer of a covenant not to sue Cisco is an "authorized sale" within the meaning of the patent exhaustion doctrine, as to the '734 Patent. It is undisputed that TR Labs offered Cisco a covenant not to sue during the proceedings on Cisco's declaratory judgment action. *See Cisco*, 583 Fed. App'x at 898 ("TR Labs' concession that it is willing to grant Cisco an unqualified covenant not to sue…"). TR Labs cannot retract its admission in this case.

The offer of a proposed covenant not to sue shows TR Labs' intent to allow Cisco to use and employ the patented practice while promising not to sue for infringement. TR Labs' stated intent to prevent any rights under the covenant to extend to Cisco's customers is not a relevant consideration under a patent exhaustion analysis. *Transcore*, 563 F.3d at 1277 (citing *Quanta*, 553 U.S at 637) ("The only issue relevant to patent exhaustion is whether [] the sales were authorized, no whether [the parties] intended, expressly or impliedly, for the covenant to extend to [its] customers."). Consequently, Cisco's downstream customers, like AT&T, have the right to practice the patent through the doctrine of patent exhaustion. *Quanta*, 553 U.S. at 637 ("But the question whether third parties received implied licenses is irrelevant because Quanta [the downstream customer] asserts its rights to practice the patents based not on implied license but on exhaustion. And exhaustion turns only on [licensee's] own license to sell products practicing the [licensor's] Patents."). *See also United States v. Univis*, 316 U.S. 241, 249-52 (1942) (finding that the purchaser's licensees were permitted to practice the patent through the doctrine of patent exhaustion).

Furthermore, an authorized sale of patent rights does not require consideration for the doctrine of patent exhaustion to apply. *LifeScan Scot. v. Shasta Techs.*, 734 F.3d 1361 (Fed. Cir. 2013). In *LifeScan*, the Federal Circuit held that "in the case of an authorized and unconditional transfer of title, the absence of consideration is no barrier to the application of patent exhaustion principles." *Id.* at 1374 ("Although the Supreme Court has often discussed exhaustion in terms of a "sale" and a "purchaser", the Court has never confined the application of patent exhaustion to that context."). In this case, any lack of consideration with TR Labs' offer of a covenant not to sue Cisco does not preclude exhaustion. As the patent holder, TR Labs "has a choice as to how to secure its reward." *Id.* at 1375. It is the Court's view that TR Labs elected to offer Cisco a covenant not to sue, in part, to defeat a declaratory judgment challenging the validity of its patent, which may suffice as consideration, but is not relevant to the patent exhaustion analysis.

### 2. Do Cisco's Products Substantially Embody the Patent?

After establishing that there was an authorized sale, the next inquiry is whether the authorized product substantially embodies the patent at issue. *See, e.g.*, *Quanta*, 553 U.S. at 630. The Supreme Court has held that substantial embodiment exists when the "reasonable and intended use [of the authorized product] was to practice the patent and because they embodie[d] essential features of [the] patented invention." *Id.* at 631 (citing *Univis,* 316 U.S. at 249-51 (1942)).

The Supreme Court's substantial embodiment test was developed in *Univis*. 316 U.S. at 241. That case involved a patent holder of eyeglass lenses who entered into a license agreement with a purchaser, Univis, that manufactured bifocals and trifocals for eyeglass lenses. *Id.* at 244. Univis sold the unfinished lenses to its licensees to create the finished patented lenses. *Id.* The Court held that the patent holder's license to Univis exhausted his patent rights as to the finished

lenses manufactured by Univis' licensees because the finished lenses embodied essential features of the licensed patented item. *Id.* at 249. The Court explained that "where one has sold an uncompleted article which, because it embodies essential features of his patented invention, is within the protection of his patent, and has destined the article to be finished by the purchaser in conformity to the patent, he has sold his invention so far as it is or may be embodied in that particular article." *Id.* at 250-51.

The Supreme Court has further clarified that substantial embodiment exists when "the only steps necessary to practice the patent is the application of common processes or the addition of standard parts." *Quanta,* 553 U.S. at 633. Thus, substantial embodiment may be found if the authorized product (1) has no reasonable non-infringing use; and (2) includes all inventive aspects of the claimed method. *Id.* at 638; *see also Keurig, Inc. v. Sturm Foods, Inc.*, 732 F.3d 1370, 1374 (Fed. Cir. 2013).

AT&T relies on *LG Electronics, Inc. v. Hitachi, Ltd*. where the court held that infringement contentions demonstrated that the authorized products substantially embodied the patents at issue and that exhaustion applied where the licensed products were combined with unspecified standard products. 655 F. Supp. 2d 1036, 1044 (N.D. Cal. 2009).

AT&T argues that TR Labs' has alleged in its infringement contentions that Cisco's products satisfy each and every claim limitation in the '734 Patent; therefore Cisco products must substantially embody the inventive aspects of the '734 Patent. AT&T Br. at 16-17. AT&T also notes that in support of its infringement contentions, TR Labs relies on Cisco's product engineering documents. *Id.* at 17. AT&T concludes that TR Labs' is bound to its infringement contentions where it has accused AT&T of infringing the '734 Patent based primarily on AT&T's use of Cisco's products. *Id.* at 16.

TR Labs' chief contention against substantial embodiment of the '734 Patent is that Cisco's products are capable of reasonable non-infringing uses. TR Labs Br. at 6. TR Labs emphasized that it offered Cisco a covenant not to sue because there was no basis to sue Cisco for direct or indirect infringement and Cisco's products were capable of substantial non-infringing uses. *Id.* at 6-7. TR Labs proposed one potential non-infringing use of Cisco's products is that they could be used in a ring network. TR Labs Reply Br. at 2. At oral argument, TR Labs identified other potential non-infringing uses of Cisco's products such as use in a SONET ring network or a linear network. Transcript of Oral Argument (Mar. 3, 2014) ("Oral Argument Tr.") at 11:9-15, *In re: TR Labs*, 09-3883, MDL 2396. TR Labs argues that AT&T's decision to use Cisco's equipment in a mesh network is what causes it to infringe on the '734 Patent. *Id.* at Tr. 16:6- 17:4. TR Labs does not dispute that it used Cisco's product engineering documents as evidence in support of its infringement contentions against AT&T as to the '734 Patent. TR Labs Br. at 1.

AT&T refuted TR Labs' potential non-infringing use argument by citing to the Federal Circuit's decision in *LifeScan*, which reversed the district court's holding, and found that where a potential non-infringing use is contemplated by a patent, such use will not defeat a claim for patent exhaustion." AT&T Reply Br. at 5.

The Court finds that Cisco's products substantially embody the claimed invention in the '734 Patent for patent exhaustion to apply. TR Labs' focus on a potential non-infringing use of Cisco's products is misplaced. In *LifeScan*, the Federal Circuit held that where a patent holder identifies a potential non-infringing use of a patent is insufficient to prevent exhaustion when "the use in question is the very use contemplated by the patented invention itself." 734 F.3d at 1369 (citing *Keurig*, 732 F.3d at 1373). Here, the use in question is AT&T's use of Cisco's

product in a mesh network and whether that product embodies the inventive aspect of the '734 Patent, in which the inventive aspect is "a specialized 'nodal switching device' designed for network restoration." *See Markman Memorandum & Order*, ECF No. 116 at 23.

The Court is not persuaded by TR Labs' potential non-infringing uses for Cisco's products to be used in a SONET ring or a linear network. Having previously reviewed several of the patents at issue during the *Markman* hearings, the Court is aware of the technological background involving the development of telecommunications networks and that these networks have generally optimized away from ring configurations to mesh configurations. *See*, e.g., U.S. Patent No. 7,260,059, "Evolution of a Telecommunications Network from Ring to Mesh Structure," filed June 28, 2002. Thus, using telecommunications products in an outdated network is the equivalent of transmitting a call through a switchboard operator when advances in technology have enabled faster and more reliable ways to connect telephone calls. As such, the non-infringing uses that TR Labs has identified are not reasonable in light of the development of the technology towards mesh networks. Thus, AT&T's accused use of Cisco's products in a mesh network is a reasonable and intended use of the authorized product, which substantially embodies the patented use under the '734 Patent.

The Court is further persuaded that Cisco's products substantially embody the claimed invention in the '734 Patent because of the infringement contentions. Specifically, for every claim in the '734 Patent, TR Labs has identified the same Cisco product to perform the functions described in the claim language. *See* AT&T Khan Decl., Ex. A. Additionally, TR Labs does not allege in the infringement contentions that AT&T engaged in any additional processes beyond using certain Cisco products in conjunction with other products that have been represented by AT&T to be standard parts in the '734 Patent. Oral Argument Tr. at 5:19 - 6:2 (Mr. Cederoth:

"There is no AT&T programming that is identified."). TR Labs also concedes to using and relying on Cisco's own engineering documents in support of its infringement contentions, which purportedly demonstrate the intended manner in which the products are to be used.

The substantial embodiment test has been satisfied here where the authorized product has (1) no reasonable non-infringing use; and (2) includes all inventive aspects of the claimed invention as defined by the infringement contentions. Thus, like *Keurig*, AT&T is free to use Cisco's authorized product, representing the "specialized nodal switching device" of the '734 Patent, in any manner it intends as the downstream consumer, without any post-sale restrictions from TR Labs. *Keurig*, 732 F.3d at 1374 ("Keurig sold its patented brewers without conditions and its purchasers therefore obtained the unfettered right to use them in any way they chose, at least as against an [infringement] challenge from Keurig.").

### III. CONCLUSION

Because TR Labs' offer of a covenant not to sue constituted an "authorized sale" to Cisco, and TR Labs framed its infringement contentions to claim that AT&T's use of Cisco's products practiced Claim 1 of the '734 Patent, the doctrine of patent exhaustion applies to dismiss TR Labs' infringement contentions against AT&T where it references the use of Cisco's products.

## ORDER

**IT IS** on this 14th day of July, 2014 ORDERED as follows:

AT&T motion for partial summary judgment for patent exhaustion is granted as to U.S. Patent No. 6,404,734 ('734 Patent); and denied as moot with respect to U.S. Patent No. 7,260,059 ('059 Patent) (ECF 267).

*s/Peter G. Sheridan*
PETER G. SHERIDAN, U.S.D.J.